**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

DONNA WIDMER,

Plaintiff,

v. Case No. 03-cv-2490-DJW

RANDALL HALLIER, et al.,

Defendants.

**MEMORANDUM AND ORDER**

This is a securities case in which Plaintiff alleges she suffered damages as the result of Defendants' professional advice in relation to transactions regarding mutual funds and variable annuities for Plaintiff's investment portfolio. The matter currently is before the Court is Defendants' Motion for Partial Summary Judgment (doc. 47). More specifically, Defendants move for judgment as a matter of law on Counts VI and VII of the Complaint, which allege Defendants violated the Kansas Securities Act and the Kansas Consumer Protection Act in their dealings with Plaintiff. For the reasons stated below, Defendants' Motion will be granted in part and denied in part.

**Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition

---

[1]Fed. R. Civ. P. 56(c).

[2]*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir.2002).

of the claim."[3] An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[4] The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[5] In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[6]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[7] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[8] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[10]

---

[3] *Wright ex rel. Trust Co. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[4] *Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[5] *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[6] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671).

[7] *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); see also *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324.

[8] *Anderson*, 477 U.S. at 256; *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[9] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quotation omitted).

[10] *Adams*, 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[11]

**Analysis**

In Counts VI and VII of her Complaint, Plaintiff alleges Defendants violated the Kansas Securities Act and the Kansas Consumer Protection Act in rendering professional advice related to transactions involving mutual funds and variable annuities for Plaintiff's investment portfolio. Defendants argue they are entitled to judgment as a matter of law on grounds that neither the purchase of mutual funds nor the purchase of variable annuities comes within the purview of the Kansas Securities Act or the Kansas Consumer Protection Act.

As a preliminary matter, the Court finds it helpful to provide a brief outline of its analysis in resolving the pending motion for partial summary judgment:

I. The Kansas Securities Act and its applicability to

  A. Transactions involving mutual funds; and

  B. Transactions involving variable annuities.

II. The Kansas Consumer Protection Act and its applicability to

  A. Transactions involving mutual funds; and

  B. Transactions involving variable annuities.

---

[11] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## I. Kansas Securities Act

### A. Is the Kansas Securities Act Applicable to Transactions Involving Mutual Funds?

In their Reply brief, Defendants concede that – contrary to their original argument – purchases of mutual funds do come within the purview of the Kansas Securities Act, and thus they are not entitled to summary judgment on Count VI of Plaintiff's Complaint with regard to any mutual fund transactions.[12] Accordingly, Defendants' Motion for Summary Judgment under the Kansas Securities Act will be denied with respect to any transaction involving mutual funds.

### B. Is the Kansas Securities Act Applicable to Transactions Involving Variable Annuities?

Defendants maintain they are entitled to judgment as a matter of law on Count VI of Plaintiff's Complaint with regard to the purchase of variable annuities. Count VI of Plaintiff's Complaint alleges liability under K.S.A. 17-1268(a) of the Kansas Securities Act, which prohibits material and misleading misrepresentations or omissions by one who has offered or sold a security. Defendants argue this claim should be dismissed with respect to any transactions involving variable annuities because the Kansas Securities Act is not applicable to transactions involving variable annuities. In support of this argument, Defendants maintain that K.S.A. 17-1252, which contains definitions for the Kansas Security Act, specifically excludes "annuity contracts" from the definition of a security:

> "Security" means any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; investment contract . . .. *"Security" does not include any insurance or endowment policy or annuity contract*

---

[12]Defendants' Reply Brief in Support of Summary Judgment at p.4 (doc. 49).

> *under which an insurance company promises to pay money either in a lump sum or periodically for life or some other specified period.*[13]

Plaintiff concedes that K.S.A. 17-1252 specifically excludes "annuity contracts" from the definition of a security. Plaintiff goes on to contend, however, that the referenced exclusion applies only to *fixed* annuity contracts and are not applicable to the variable annuity contracts at issue in this case. In sole support of her contention, Plaintiff notes that the Kansas Securities Act – which is the law the Court must apply in resolving the issue before it – was repealed in its entirety on July 1, 2005 as a result of the passage of House Bill 2347, now known as the "Kansas Uniform Securities Act."[14] Plaintiff notes that the Kansas Uniform Securities Act adds the following boldfaced language to designate what is excluded from the definition of a security:

> The term security does not include an insurance or endowment policy or annuity contract under which an insurance company promises to pay **a fixed or variable sum of** money either in a lump sum or periodically for life or other specified period.[15]

Plaintiff argues addition of the words "fixed or variable" in reference to "annuity" in the new statute means the Kansas legislature intended to change the law to now include "variable annuities" in the exclusion. The Court is not persuaded by Plaintiff's argument.

---

[13]K.S.A. 17-1252(j) (emphasis added).

[14]*See* House Bill 2347, Ch. 154, Sec. 52(a) (tentatively codified at K.S.A. 17-12a703) (Effective July 1, 2005, "[t]he Kansas securities act, K.S.A. 17-1252 through 17- 1275, is hereby repealed subject to the following limitations: (a) Applicability of predecessor act to pending proceedings and existing rights. The predecessor act exclusively governs all actions or proceedings that are pending on the effective date of this act or may be instituted on the basis of conduct occurring before the effective date of this act, but a civil action may not be maintained to enforce any liability under the predecessor act unless instituted within any period of limitation that applied when the cause of action accrued or within five years after the effective date of this act, whichever is earlier.")

[15]*Compare* K.S.A. 17-1252(j) to House Bill 2347, Ch. 154, Sec. (2)(28)(B) (tentatively codified at K.S.A. 17-12a102).

It is well-settled that when the language of the statute is clear and does not contradict a clearly expressed legislative intent, the court's inquiry is complete and the language controls.[16] The strong presumption that the plain language of the statute expresses legislative intent can only be rebutted "when a contrary legislative intent is clearly expressed."[17] Thus, in order to prevail on this issue, Plaintiff must provide clear evidence that prior to passage of the Kansas Uniform Securities Act, the Kansas legislature intended variable annuities to be covered by the Kansas Securities Act.

The statute at issue here unambiguously states that the term "'security' does not include *any* insurance or endowment policy or *annuity contract* under which an insurance company promises to pay money either in a lump sum or periodically for life or some other specified period."[18] Plaintiff has failed to point to any legislative intent that would be defeated by giving literal meaning to the language used in the statute.[19] Without clear, contrary evidence of legislative intent, the Court must give effect to the plain meaning of the statute.[20]

Moreover, the definition of "security" proposed by Plaintiff conflicts with the Kansas law that grants the Kansas insurance commissioner exclusive jurisdiction to regulate the issuance and sale of variable

---

[16]*Tompkins v. Bise*, 259 Kan. 39, 910 P.2d 185,190 (1996). *See, also, Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 592 (1980) ("[I]t would be a strange canon of statutory construction that would require Congress to state in committee reports or elsewhere in its deliberations that which is obvious on the face of a statute.").

[17]*Ardestani v. INS,* 502 U.S. 129, 135-36 (1991) (internal quotations and citations omitted).

[18]K.S.A. 17-1252(j) (emphasis added).

[19]*See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980) ("Absent a clearly expressed legislative intention to the contrary, [statutory] language must ordinarily be regarded as conclusive.").

[20]*Id.*

contracts.[21] Plaintiff's construction also ignores the fact that the issuance and sale of variable contracts already is comprehensively regulated by the Securities and Exchange Commission, the National Association of Securities Dealers, the Kansas state insurance departments, and in the case of group life and annuities, the Department of Labor.

For all of the reasons set forth above, the Court finds that K.S.A. 17-1252, which contains definitions for the Kansas Security Act, specifically excludes "annuity contracts" from the definition of a security. The Court thus finds that purchases of variable annuities do not come within the purview of the Kansas Securities Act. Accordingly, Defendants' Motion for Partial Summary Judgment under the Kansas Securities Act will be granted with respect to any transactions involving variable annuities.

## II. Kansas Consumer Protection Act

Count VII of Plaintiff's Complaint alleges liability under K.S.A. 50-626(a) of the Kansas Consumer Protection Act, which prohibits a supplier from engaging "in any deceptive act or practice in connection with a consumer transaction."[22] Defendants argue that this claim should be dismissed because the Kansas Consumer Protection Act is not applicable to transactions involving mutual funds or to transactions involving variable annuities.

---

[21] K.S.A. 40-436(l) (amended by Section 2 of Kansas Laws Ch. 42 (H.B. 2325)) ("The commissioner shall have the sole and exclusive jurisdiction and authority to regulate the issuance and sale of such contracts and to promulgate such reasonable rules and regulations as may be necessary to carry out the purposes and provisions of this act, and such contracts, the companies which issue them, and the agents or other persons who sell them, shall not be subject to the provisions of article 12 of chapter 17 of the Kansas Statutes Annotated, and amendments thereto, nor to the jurisdiction of the securities commissioner of this state).

[22] K.S.A. 50-626(a).

### A. Is the Kansas ConsumerProtection Act Applicable to Transactions Involving Mutual Funds?

K.S.A. 50-624, which contains the definitions for the Kansas Consumer Protection Act, defines a "consumer transaction" as follows:

> "Consumer transaction" means a sale, lease, assignment or other disposition for value of property or services within this state *(except insurance contracts regulated under state law*) to a consumer; or a solicitation by a supplier with respect to any of these dispositions.[23]

Defendants contend that, although the language in the statute excludes only "insurance contracts regulated under state law" and not securities – such as the mutual funds at issue here – from the definition of "consumer transaction," the legislative history regarding K.S.A. 50-624 implies that security transactions such as mutual fund trading are still intended to be excluded. In support of this contention, Defendants reference the Comment to the 1973 version of K.S.A. 50-624(c), which states that

> [t]he only consumer transactions not covered by this act are insurance contracts and securities. The legislature felt that securities fraud is adequately dealt with in the Kansas Blue Sky Law (K.S.A. 17-1252 to 17-1275), and that insurance fraud is adequately covered by K.S.A. 40-2402 to 40-2411; dual regulation in these two areas was felt to be undesirable.[24]

The Court is not persuaded by Defendants' argument. The strong presumption that the plain language of the statute expresses legislative intent can only be rebutted "when a contrary legislative intent is clearly expressed."[25] Given Kansas Session Laws clearly reflect that the statutory definition of "consumer transaction" was amended in 1983 to remove the "securities" exclusion, the plain language of the statute today clearly

---

[23] K.S.A. 50-624(c) (emphasis added).

[24] K.S.A. 50-624(c) (Kansas Comment 1973).

[25] *Ardestani v. INS*, 502 U.S. 129, 135-36 (1991) (internal quotations and citations omitted).

expresses the legislature's intent to make the amendment.[26] That the Comment to this statute has not been amended since the statute's inception in 1973 is not indicative of a contrary legislative intent.

Finally, Defendants argue that because the mutual fund transactions are governed by the Kansas Securities Act, those transactions cannot be the basis of liability under the Kansas Consumer Protection Act. In support of this argument, Defendants cite to the following rule of statutory construction:

> It is a cardinal rule of law that statutes complete in themselves, relating to a specific thing, take precedence over general statutes or over other statutes which deal only incidentally with the same question, or which might be construed to relate to it. Where there is a conflict between a statute dealing generally with a subject, and another dealing specifically with a certain phase of it, the specific legislation controls in a proper case.[27]

The Court finds Defendants' interpretation of this rule of law to be overly broad. As the quotation submitted by Defendants explicitly states, such a rule is applied in those cases "where there is a conflict between a statute dealing generally with the subject, and another dealing specifically with a certain phase of it." Defendants have submitted no evidence of such a conflict.

Based on this discussion, the Court finds that the Consumer Protection Act is applicable to transactions involving securities – such as the mutual funds transactions at issue here; accordingly, Defendants' Motion for Summary Judgment under the Kansas Consumer Protection Act will be denied with respect to any transaction involving mutual funds.

---

[26]Kansas Session Laws 1983, ch. 179, § 1.

[27]*Chelsea Plaza Homes, Inc. v. Moore*, 226 Kan. 430, 601 P.2d 1100, 1132 (1979) (citation omitted).

**B. Is the Consumer Protection Act Applicable to Transactions Involving Variable Annuities?**

Defendants argue the Kansas Consumer Protection Act specifically excludes insurance contracts regulated under state law from the scope of its protection:

> "Consumer transaction" means a sale, lease, assignment or other disposition for value of property or services within this state *(except insurance contracts regulated under state law*) to a consumer; or a solicitation by a supplier with respect to any of these dispositions.[28]

In response to this argument, Plaintiff concedes that "variable annuity contracts are insurance contracts regulated under Kansas law, and by the plain meaning of the Kansas Consumer Protection Act, are outside the scope of the act."[29] Given Plaintiff's stated position, there is no legal or factual dispute on this issue and Defendants' Motion for Summary Judgment under the Kansas Consumer Protection Act will be granted with respect to any transaction involving variable annuities.

Based on this discussion, the Court hereby Orders that

(1) Defendants' Motion for Partial Summary Judgment (doc. 47) under the Kansas Securities Act is denied with respect to any transaction involving mutual funds.

(2) Defendants' Motion for Partial Summary Judgment (doc. 47) under the Kansas Securities Act is granted with respect to any transaction involving variable annuities.

(3) Defendants' Motion for Partial Summary Judgment (doc. 47) under the Kansas Consumer Protection Act is denied with respect to any transaction involving mutual funds.

(4) Defendants' Motion for Partial Summary Judgment (doc. 47) under the Kansas Consumer Protection Act is granted with respect to any transaction involving variable annuities.

IT IS SO ORDERED.

---

[28]K.S.A. 50-624(c) (emphasis added).

[29]Plaintiff's Brief in Opposition to Summary Judgment at p. 6 (doc. 48).

Dated in Kansas City, Kansas on this 29th day of July, 2005.

s/ David J. Waxse
David J. Waxse
United States Magistrate Judge

cc: All counsel and *pro se* parties